IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEWART STICKLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-00787-CV-W-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

**O R D E R**

Plaintiff Stewart Stickle ("Stickle") challenges the Social Security Commissioner's ("Commissioner") denial of his application for disability and disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"). Stickle has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Stickle argues that the record does not support the Administrative Law Judge's ("ALJ") finding that he was not under a disability because: (1) the ALJ's determination of Stickle's credibility is not supported by substantial evidence, (2) the ALJ gave insufficient weight to the opinions of Stickle's primary treating physician, (3) the ALJ failed to develop an adequate record, and (4) the ALJ's determination that Stickle could return to other work existing in significant numbers in the national economy is not supported by substantial evidence. The complete facts and arguments are presented in the parties' briefs and will be

1

duplicated here only to the extent necessary.[1]  Because this Court finds no reversible error in the ALJ's decision, Stickle's Petition is denied.

## I.      Procedural and Factual History

### A.      Procedural History

Stickle filed his initial application for disability and disability insurance under Title II of the Act on June 9, 2005, in which he alleged disability beginning on December 1, 1999. This application was denied by the Commissioner on August 24, 2005.  Stickle applied for and was granted a hearing before an ALJ, which took place on March 3, 2008.  The ALJ rendered his decision on March 20, 2008, finding that Stickle was not under a disability. Stickle requested review of that decision by the Appeals Council of the Social Security Administration, and that request was denied on September 25, 2008, making the ALJ's determination the final determination of the Commissioner.  On October 20, 2008, Stickle then filed a timely complaint with this Court challenging the Commissioner's final determination.

### B.      Factual History

Stickle was born on April 5, 1961, and was 46 years old at the time of his hearing before the ALJ.  Until the onset of his alleged disability, Stickle had tended bar for 18 years and had owned and operated his family's restaurant and bar for three years.  Since that time, he has been unemployed and has lived off income from rental properties.

---

[1] Portions of the parties' briefs are adopted without quotation designated.

Stickle alleges that he is disabled by virtue of his Dupuytren's disease, which is a condition that results in the thickening and shortening of the tendons of the hands and/or feet, causing an involuntary curving and deformity of the digits, in this case Stickle's right ring and little fingers. The disease can substantially limit movement and motor skills in the affected digits, and Stickle is right hand dominant. The ALJ also considered the compounding effects on Stickle's disability of back and hip problems resulting from a childhood injury, of arthritis in his feet, of chronic nodules and hammertoe deformities in both feet, and of carpal tunnel syndrome related to a 1999 work injury.

Stickle suffers pain in his hands as a result of his Dupuytren's disease. He testified before the ALJ that although he can lift things like a glass of water with his right hand or a case of soda with his left hand, he has swelling and pain in his hands which make many routine tasks difficult or impossible.

Stickle also testified before the ALJ that his other conditions prevent him from standing for long periods of time or from walking more than about a block without severe pain and swelling in his feet. He claimed that he is obliged to sit for three to four hours to relieve the pain caused by standing and to wait 24 hours for the swelling in his feet to subside. Complicating this problem is Stickle's residual injury from a childhood fall from a tree, which he said has always caused pain to radiate from his back and hip when he sits for an extended time. He testified that the need to sit more as a result of his foot pain has caused his hip and back problems to worsen.

3

Since leaving work in 2000, Stickle testified that he spends most days laying down watching television. He claims his pain (which he said ranges from a 5 to a 10 on a 1 to 10 scale) disturbs his sleep and prevents him from doing household chores. He also testified that his problems standing and walking require him to elevate his feet regularly, while his hip and back problems limit his ability to sit upright for more than an hour on a couch or for more than 15 minutes on a hard chair.

While the ALJ found that Stickle's impairment could reasonably be expected to produce the symptoms alleged, he held that Stickle's testimony as to the intensity, persistence, and limiting effects of those symptoms was not credible to the extent it was inconsistent with the medical evidence that influenced the ALJ's determination of residual functional capacity ("RFC").

Stickle supports his claims with the testimony of several physicians, most notably treating physician, Dr. James H. Olson, M.D., who has examined Stickle for various conditions on 24 occasions since 1973. Dr. Olson offered two letters and oral testimony before the ALJ. He asserts that Stickle's Dupuytren's disease, hip and back pain, arthritis of the feet, hypertension, hemochromatosis, hyperlipidemia, and various other ailments have prevented him from working at a sedentary level since 1999. Dr. Olson also filled out a Physician's Residual Functional Capacity Form in which he opined that Stickle could lift and carry 10 pounds frequently, sit for less than one hour at a time for a total of four hours in an eight hour workday, and stand or walk for less than one hour at a time for a total of two hours in an eight hour workday. Furthermore, he would need to elevate his feet two hours out of

an eight hour workday. The form described Stickle's pain as "debilitating" and indicated that his motor skills and mobility were substantially limited. Dr. Olson predicted that Stickle's ailments would force him to miss work more than three times per month. The Physician's Residual Functional Capacity Form includes a section for the physician to clarify the medical evidence on which his opinion is based, if not obvious, but Dr. Olson responded to that prompt by writing only "see notes."

Notably, on March 30, 2007, the date Dr. Olson issued his first letter regarding Stickle's inability to work, the physician's treatment notes state that Stickle "needs a letter stating he can't sit for more than eight hours a day, 40 hours a week. He has chronic hip and leg pain since he fell from a tree at a young age and cannot sit for more than an hour or two before he has pain in his hips radiating into both legs. I wrote a note for him to this effect." A review of Dr. Olson's treatment notes shows that Stickle had never previously mentioned hip or leg pain as a result of any prior injury, nor did Dr. Olson ever treat Stickle for such pain. The ALJ noted that because Dr. Olson's opinions as to the limiting effect of Stickle's leg and hip injuries appeared based primarily on Stickle's subjective complaints, he did not give those opinions great weight in determining Stickle's RFC.

On the advice of his attorney, Stickle consulted Dr. Ronald Zipper, D.O., concerning his ambulatory problems and general hand and foot pain. Dr. Zipper confirmed Dr. Olson's diagnosis of Dypuytren's disease (this diagnosis was also confirmed by Dr. Craig Newlan, M.D.) and determined that Stickle did have chronic bilateral foot pain, probably caused by plantar fascitis and fibromas. However, Dr. Zipper found Stickle's condition to be unrelated

to his ability to work, and he gave Stickle a permanent partial disability rating of zero percent.

After considering this and other medical evidence, the ALJ made a determination as to Stickle's RFC:

> The claimant has the residual functional capacity to perform work of sedentary exertion in that he is able to lift and/or carry 10 pounds, stand and/or walk for two hours out of an eight hour workday, and sit for six hours out of an eight hour workday, provided such work is performed on a level/even surface and involves no operation of foot controls, no fine manipulation with the right hand, and the claimant has the option to sit and/or stand every 20 minutes. Additionally, such work should not involve repetitive use, lifting, or forceful gripping or grabbing with the right hand.

(Tr. 21). While this determination was not entirely consistent with the opinions offered by Stickle's treating physician, Dr. Olson, the ALJ indicated that Dr. Olson's testimony carried diminished credibility because it appeared to be based more on Stickle's subjective allegations than on objective medical evidence. Despite acknowledging that his Dupuytren's disease is a "severe impairment" under the Act, the ALJ held that Stickle's RFC did not preclude him from sedentary work, provided the specific limitations set forth in the RFC statement are met.

In addition to medical testimony, the ALJ heard testimony from a vocational expert ("VE"), Marianne K. Lumpe, who considered the ALJ's RFC determination, as well as Stickle's age, education, and work experience. She testified that, while Dr. Olson's RFC description would preclude any work, under the ALJ's RFC description Stickle was capable of performing the representative occupation of information clerk (Dictionary of Occupational

Titles ("DOT") 237.367-046). She further testified that there were 200 such jobs in Missouri and 16,000 in the national economy. Thus, because Stickle was capable of performing work available in substantial quantities in the national economy, his application for disability and disability insurance was denied.

**II. Discussion**

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008). "The decision of the ALJ 'is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact.'" *Id.* (quoting *Nicola*, 480 F.3d at 886).

The Commissioner's regulations governing determinations of disability establish a five-step sequential evaluation process which ALJs must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520; 416.920 (2008). In the first three steps of the process, the Commissioner determines whether the claimant is engaged in substantial gainful activity, whether he or she has a medically determinable impairment that is "severe" under the meaning of the Act, and whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, a

7

claimant must establish that his or her RFC is such that he or she is not able to return to any past relevant work. *Id. See also, e.g.*, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (clarifying that the claimant has the burden of showing an inability to work). If the claimant establishes that he or she is unable to return to past relevant work, the burden shifts to the Commissioner to show that the claimant can perform some work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920 (2008). The Commissioner may meet this step five burden by relying on the medical-vocational guidelines or on vocational expert testimony. *See Pearsall*, 274 F.3d at 1219.

### A. The ALJ's Determination of Stickle's Credibility is Supported by Substantial Evidence

Stickle contends that the ALJ erred in his determination that Stickle's testimony was not fully credible as to the severity and limiting effect of his symptoms.

Before determining whether a claimant has met his step four burden of showing that his RFC precluded him from returning to past relevant work, the ALJ must evaluate the credibility of the claimant's testimony. *See id.* at 1218. In evaluating the credibility of subjective complaints, the ALJ should consider any objective medical evidence, but also "any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." *Id.* The primary question is not whether a claimant actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent him from performing substantial gainful activity. *See McGinnis*

8

*v. Chater*, 74 F. 3d 873, 874 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987)). The evaluation of a claimant's credibility is primarily the task of the ALJ, not the reviewing court. *See Pearsall*, 274 F.3d at 1218 (citing *Benskin*, 830 F.2d at 882).

Here, the ALJ found Stickle's testimony credible as to the existence and cause of his symptoms, but not credible as to their severity and limiting effect. This determination is supported by substantial evidence. As the ALJ correctly pointed out, Stickle worked for several years despite the alleged limiting effect of his impairment. In November 2000, eleven months after his alleged onset date, Dr. Robert Littlejohn, M.D., reported that Stickle was "working in a regular-duty capacity." Dr. Zipper also opined with "reasonable medical certainty" in a letter to Stickle's attorney that Stickle suffered no permanent partial disability. Although Dr. Olson said Stickle could not perform a job that required prolonged sitting due to a back injury, he acknowledged that Stickle's back injury occurred when he was a child. Where an individual has worked with an impairment over a period of years, absent significant deterioration, it cannot be considered disabling at present. *See Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992). *See also, e.g., Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (alleged extreme fatigue not presently disabling when claimant worked through the fatigue for four years); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (speech impediment not as disabling as alleged when claimant continued to work despite suffering a stroke, which claimant claimed worsened the impediment).

Because the ALJ clearly articulated the inconsistencies between Stickle's subjective complaints and the objective medical evidence and physicians' opinion testimony on which

9

his RFC judgment was made, his determination that Stickle is not fully credible should not be disturbed.

### B. The ALJ Gave Sufficient Weight to Dr. Olson's Testimony

Stickle argues that the ALJ improperly discounted the opinions of Dr. Olson, his primary treating physician, as to Stickle's capacity to work despite his impairment. Stickle correctly identifies in his brief the five factors specifically outlined in section 404.1527(d) of the Social Security Administration's regulations, however that section also recognizes that other factors may be relevant and authorizes an ALJ to consider "any factors [...] which tend to support or contradict the opinion" of the treating physician. *See* 20 C.F.R. § 404.1527(d)(6) (2008). The five listed factors are: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the quantity of evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the treating physician is also a specialist. *See id.* at § 404.1527(d).

Although the opinions of a treating physician should be given substantial weight, they are not conclusive, and the ALJ has a duty to evaluate the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). To be valid, the opinion must be supported by clinical or diagnostic data. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998); *Trossauer v. Chater*, 121 F.3d 341, 343 (8th Cir. 1997). It is the job of the ALJ to resolve conflicts among medical experts. *See Finch*, 547 F.3d at 936. The ALJ may reject the opinions of any medical expert when those opinions are inconsistent with the record as a whole. *See id.* For example, when a treating physician's opinions are based entirely or

10

primarily on the claimant's subjective complaints rather than the physician's own findings, an ALJ can ignore those opinions or give them less weight. *See, e.g., Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (discrediting entirely a treating physician's opinions based solely on subjective complaints); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (finding diminished credibility in a treating physician's opinion when it was based mostly on claimant's subjective complaints, but partly on objective medical evidence).

In this case, the ALJ properly considered the relevant factors, and his determination to give Dr. Olson's opinion testimony limited weight was supported by substantial evidence. The ALJ acknowledged that Dr. Olson's opinion is to be given "great weight, provided it is not inconsistent with other evidence of record." The ALJ made clear that both the third and fourth factors (the evidence supporting the opinion and the opinion's consistency with other medical evidence) cut against the credibility of Dr. Olson's opinions.

Dr. Olson's treatment notes state that Stickle needed a doctor's note that he cannot sit for more than eight hours a day. The ALJ properly discounted this opinion as "based on the claimant's subjective complaints and [...] not supported by [Dr. Olson's] own treating records." Dr. Olson could have provided clarification on the Physician's Residual Capacity form as to what evidence led him to his conclusion, but he failed to do so. Furthermore, the ALJ found evidence in direct contradiction to Dr. Olson's opinion that Stickle was totally disabled; Dr. Zipper said Stickle suffered zero percent disability, and Dr. Littlejohn reported that Stickle continued working for at least eleven months after his alleged onset date.

11

Given the lack of objective medical evidence in support of Dr. Olson's opinion as to Stickle's ability to work and the abundance of evidence opposing it, the ALJ was under no obligation to give the opinion special weight on that issue. Indeed, the ALJ did give "great weight" to Dr. Olson's other opinions, including his opinions on the existence of Dupuytren's disease as a severe impairment, on the need for Stickle to rest after prolonged standing, and on the dangers involved in repetitive or forceful use of Stickle's right hand–all of which were incorporated in the ALJ's RFC decision.

Stickle also complains that the ALJ erred by failing to include a more thorough discussion of the duration and nature of Dr. Olson's treatment of Stickle–the first and second factors in the analysis. However, "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) (internal quotations omitted). Because the credibility of Dr. Olson's testimony turned on other factors in the analysis, a discussion of the first two factors was unnecessary.

### C. The ALJ Developed an Adequate Record

Plaintiff asserts that the ALJ erred by failing to order a consultative examination or the testimony of a medical expert.

The ALJ should develop a reasonably complete record. *See* 20 C.F.R. § 404.1544 (2008). The ALJ is required to order a consultative medical examination only when the evidence as a whole is not sufficient to support a decision on a claim. *See id.* at §§ 404.1519(a)-404.1519(b). In addition, the ALJ may ask for and consider the opinion of a

12

medical advisor on the nature and severity of Plaintiff's impairment and whether the impairment equals the requirements of any listed impairment. *See id.* at § 404.1527(f)(2). Case law and regulations indicate that the ALJ has discretion over the ordering of additional tests, and such tests are only required if necessary to make an informed disability decision. *See id.* at § 404.1519(a); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).

Here, the ALJ's determination of Stickle's RFC is sufficiently supported by the medical evidence in the record without the need for additional medical evidence. The ALJ's decision points directly to the medical evidence and the opinions of Dr. Olson, Dr. Zipper, and Dr. Newlan on which the ALJ based his analysis. Neither Stickle's complaint nor his briefs explain why he believes the ALJ should have ordered a consultative examination or why the testimony of medical expert was necessary. Additional medical evidence was not required in this case because the evidence as a whole is sufficient to support the ALJ's decision. The ALJ in this case adequately developed the record.

### D. The ALJ's Determination that Stickle Could Return to Work Existing in Significant Numbers in the National Economy is Supported by Substantial Evidence

13

Finally, Stickle contends that there is not substantial evidence to support the ALJ's finding that, considering his RFC, age, education, and work experience, Stickle could return to work existing in significant numbers in the national economy.

Although the hypothetical questions posed to a VE must set forth with reasonable precision the claimant's impairments, *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992), they need only include those impairments and limitations found credible by the ALJ. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). "Discredited complaints of pain, however, are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). When the hypothetical questions posed to a VE are properly formulated, that VE's testimony constitutes substantial evidence supporting an ALJ's decision consistent with that testimony. *See Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993) ("The VE's testimony amounts to substantial evidence if the question asked precisely stated the impairments that the ALJ accepted as true.").

At Mr. Stickle's hearing before the ALJ, the ALJ posed to the VE a hypothetical involving a 38-46 year old man with a high school diploma and two years of college who can do the full range of sedentary work, with the following exceptions: (1) he cannot perform with his right hand any task requiring lifting, fine dexterity, or repetitive use (including, specifically, writing or operating a telephone); (2) he can stand only on a level surface; (3) he cannot operate foot controls; and (4) he requires the option to sit or stand in 20 minute increments. Because these four limitations on sedentary work precisely correspond to each

14

of the limitations included in the ALJ's RFC determination, the VE's testimony that this hypothetical man could perform the job of information clerk (DOT 237.367-046) and that 200 such jobs were available in Missouri and 16,000 in the United States constitutes substantial evidence in support of the ALJ's decision.

### III.     Conclusion

Accordingly, it is hereby

ORDERED that Stickle's Petition [Doc. # 1] is DENIED.

 s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  June 9, 2009
Jefferson City, Missouri